FRANK SMITH, Appellant, v. ERIE RAILROAD COMPANY, Respondent.

Second Department, March 28, 1918.

Railroads — negligence — injury to automobilist at grade crossing — automobile unable to proceed when partially across tracks — negligence by remaining in dangerous position.

Action to recover for personal injuries received by the plaintiff who was struck by the defendant's train while attempting to cross its tracks in an automobile. It appeared that the view up and down the tracks was somewhat obstructed when the plaintiff was thirty-eight feet distant, but at a less distance there was an uninterrupted view for half a mile. The plaintiff, driving his car slowly, attempted to cross the rails when the car stopped through the inability of the wheels to propel the vehicle owing to the alleged existence of oil upon the crossing, but instead of alighting to avoid personal injury from the approaching train the plaintiff and a companion remained in the vehicle. Evidence examined, and held, that the complaint was properly dismissed in that the plaintiff took a dangerous chance in going upon the track and, even if detained there by the condition of the crossing, he negligently and unnecessarily continued his exposure to danger.

A person may take the risk of an on-coming train to save life, but not to save property.

APPEAL by the plaintiff, Frank Smith, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Orange on the 20th day of February, 1917, upon a dismissal of the complaint by direction

of the court at the close of the case, and also from an order entered in said clerk's office on the same day setting aside the verdict of a jury in plaintiff's favor for $5,000 which had been received pending the decision on the motion for a nonsuit on which decision had been reserved by consent.

*Ivan A. Gardner,* for the appellant.

*Elbert N. Oakes* [*Thomas Watts* and *John Bright* with him on the brief], for the respondent.

THOMAS, J.:

The plaintiff, driving an automobile laden with milk in cans, collided with defendant's train at Tidd's Crossing. The young woman sitting at his right was killed, and for his injuries he received a verdict of $5,000, which the court set aside and thereupon dismissed the complaint, upon the ground, I assume, that plaintiff's negligence contributed to the injury. The double tracks ran somewhat diagonally across the highway, and as plaintiff, from the south, approached the east-bound track on a road upgrade to within some ten feet of it, his view to the west, whence the train came, was somewhat obscured, or, as plaintiff stated, practically obstructed. The plaintiff testified to a rather absorbed looking alternately towards the west and east for several hundred feet from the track. Such search on the part of one very familiar with the road and its environment may suggest improbable anxiety. But it is not necessary to examine critically what he did until he was within some forty-five feet of the first rail of the east-bound track. He testified that about thirty-five or forty feet from it he stopped his car and looked in each direction and listened, and started forward only after discovering no evidences of an approaching train. Accepting his statement that his car was thirty-five feet from the track, and that he was four feet from the front of his car, his position was thirty-nine feet from the track. From the position where his car was at rest he estimates that he could see to the west two rods, and from that point, proceeding at a speed of about five miles per hour, he continued until the front wheels of the car had crossed the first rail, when the car, but not its engine, stopped,

and meantine he had been looking to the right and to the left continuously. After the car stopped across the rails, as described, the east-bound train came forward and struck the automobile. The plaintiff explains his inability to remove his car from the track by the presence of oil on the crossing, wherein the wheels revolved without imparting motion forward or backward. Plaintiff testified that during the time that he was passing over the thirty-nine feet he probably looked two or three times to the west, and on such occasions, he said, " I could see up to the main crossing and further." But the first time that he saw the train was after the front wheels of his car had passed the first rail, and then he discovered it at the main crossing, known as Howells Crossing. The crossing at Howells was 1,082 feet from Tidd's Crossing, and is west of the main station at Howells. The whistling post is further west, near McDermott's Creamery, and is 2,588 feet from Tidd's Crossing. While the jury might well find that the plaintiff's view of the track to the westward was obscured until he came near the point where he stopped his automobile, yet thereafter there was opportunity to look along the track to the westward for a considerable distance. The defendant's photographs, verified by the testimony of witnesses, show that at the distances of 5, 10, 15 and 20 feet from the track there was an uninterrupted view for half a mile, which at the distance of 25 feet from the track was reduced to 1,500 feet, while 30 feet away the view was limited to 800 feet; 35 feet, 1,000; 40 feet, 800, and 45 feet, 400. However, one of defendant's witnesses testified that at the distance of 44 feet from the track he could see a train only 200 feet away. There was some evidence on the part of plaintiff's witnesses Palmer and Lamson and Tidd tending to show some obscuration of the view, but it slightly, if at all, impairs the evidence that at distances 5 feet apart the plaintiff for 20 feet before reaching the track had a clear view for a half mile. Indeed, as he states, he could see to the " main crossing and further," and he did see the train 1,082 feet away. If the train was going forty-five miles an hour, its rate of speed would be 66 feet per second. And so for some sixteen seconds after plaintiff saw it at Howells Crossing he was sitting in his car and trying to remove it from the track. Accepting plaintiff's

estimate of his speed as five miles per hour, or 5.32 feet per second, the defendant computes that when the plaintiff's automobile was 20 feet from the crossing the train was 1,262 feet away, and that when 10 feet from the crossing, 1,172 feet distant. With such data, the question arises whether plaintiff, traveling through a distance of 20 feet and able to see a half a mile, should have seen a train within 1,500 feet away, and whether, seeing it, or able to see it, he was guilty of contributory negligence in entering the track, and whether the alleged negligence of the defendant's engineer to give signals was a proximate cause of the accident. This brings up sharply the problem whether as a matter of law a traveler by automobile is negligent in trying to pass in front of a train at such a distance. The court said to the jury: " I charge you as a matter of law, that if he had fourteen or eighteen feet view from the track, whatever he did have, sufficient view of any oncoming train, and then persisted in going on the track, you cannot find any verdict in favor of the plaintiff." At what distance from a train and for what period of time must a person suspend his traveling to give the railroad train the right of way? The train might be so proximate that a finding that it was not negligent for a traveler to enter the track would be on its face irrational. But there must be some point of remoteness that would justify a jury in finding that the traveler was free from negligence in pursuing his way. It is very unsafe to make too nice calculations based on estimates of speed and time. Indeed, the jury could have considered that when the plaintiff entered upon the track the train was a quarter of a mile away. The plaintiff had sufficient time to cross the track and to clear the train, for in those sixteen seconds which intervened after the automobile had stopped and before the train came, he could but for the detention have traveled over 80 feet. The facts, then, are these: The traveler by loaded automobile moving at the rate of five miles per hour, within 20 feet of the track, had, or should have had, knowledge that a rapidly approaching train was in plain sight and some 1,200 to 1,500 feet away. It is immaterial to the solution of the question whether warning signals had been given at that juncture. The known and recognizable presence of the

train was sufficient warning. (*Pakalinsky* v. *N. Y. C. & H. R. R. R. Co.*, 82 N. Y. 424.) The traveler had some eighteen seconds to clear the train and sixteen seconds to do so when he was on the track. Was it *per se* negligent to try to go ahead of the train? For the argument, at least, let it be admitted that it was not. But the traveler knew or is deemed to know the situation. If all goes well, the automobile and its occupants without hurrying would go over in safety. But all did not go normally. The automobile stopped on the track, and, so detained, was hit by the train. But the failure to give signals did not cause the automobile to halt and convert a probably safe passage into a threatened disaster, nor did the plaintiff's attempt to take precedence of the train cause it, although it furnished an opportunity for the cause to operate. If the stoppage was for lack of power in the automobile, or through mismanagement of the operator, the fault may be that of the plaintiff, but it cannot be that of the defendant. But the plaintiff would acquit himself of fault for this intervening cause by ascribing the suspended motion of his car to the oil on the crossing. That oil was there is undoubted. Several of plaintiff's witnesses testified to its presence. One of them stated that it was fresh oil. Two of defendant's witnesses testified to the absence of oil, although one was not attentive to it. Others said that there was no fresh oil, and others that it was oiled a week or ten days before the accident. An expert testified that oil would not stop the car. Whether oil under any conditions would cause the car to stop, and whether such conditions were present, are questions of fact. And yet, if any negligence of the defendant was the sole proximate cause of the injury, it was failure to use such reasonable care in oiling the place that the wheels of a passing automobile would not spin about in the oil and deprive the car of its forward movement. If that was the proximate cause of the accident, it was not submitted to the jury as a ground of negligence on the part of the defendant, nor was such issue proffered by the complaint. Therefore, the decision must be that no negligence on the part of the defendant that was a proximate cause of the accident was plead and proved. There is a further consideration. For some sixteen seconds at least, the plaintiff

sat in his car with the young girl at his side, knowing that the train was swiftly approaching. Assume that he was there by no fault of his own. Make allowance for the emergency and the natural desire to save his property and his momentary expectation that he would succeed in moving his car. There is a limit to such considerations. The agency that was coming swiftly to destroy him and his passenger should have ruled him to save life rather than property. It is an irrational excuse that his slipping wheels would not carry his person from danger, when he had the chance to go free from harm and let the young woman live. I cannot but think that he took a dangerous chance in going on the track, and that, even if he was detained there for a time by the condition of the crossing, he negligently and unnecessarily continued the exposure to danger. A person may risk an oncoming train to save life, but not to save property. (*Eckert* v. *Long Island R. R. Co.*, 43 N. Y. 502; *Morris* v. *Railway Co.*, 148 id. 182.)

The judgment and order should be affirmed, with costs.

Present — JENKS, P. J., THOMAS, MILLS, RICH and PUTNAM, JJ.

Judgment and order unanimously affirmed, with costs.